## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:10cv296

| | | |
|---|---|---|
| AMANDA L. FIELDS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| IRA R. TROLLINGER, individually | ) | |
| and in his official capacity; COY W. | ) | |
| GIBSON, individually and in his | ) | |
| official capacity; SUSAN I. | ) | |
| WESTALL, individually and in her | ) | |
| official capacity, and THE | ) | |
| MCDOWELL COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendants' Motions to Dismiss.

Having carefully considered defendants' Motions to Dismiss, plaintiff's Response,

and defendants' Reply, and reviewed the pleadings, the court enters the following

findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

## I.    Factual Background

For the limited purpose of the pending Motions to Dismiss, the court has

considered the allegations of the Complaint as true and will view them in a light most

favorable to plaintiff.

Plaintiff contends that she was hired by the McDowell County Board of Education as a full-time seventh and eighth grade language arts teacher in August 2006. Complaint ("Cmpl."), ¶¶ 12-13. On January 26, 2009, plaintiff alleges that due to major depressive disorder and following the death of a friend, she suffered a "dissociative event,"[1] which led to her admission for in-patient mental health care on January 28, 2009, for two weeks. Id., ¶¶ 20-21. Plaintiff contends that at the times relevant to this action, such major depressive disorder substantially limited one or more major life activities. Id., ¶ 20.

Plaintiff alleges that during such in-patient care, defendant Coy W. Gibson ("Defendant Gibson"), the principal of the middle school where she worked, repeatedly contacted her parents via telephone, id., ¶ 22, leaving voice messages that he needed to contact plaintiff immediately regarding her employment. Id. Plaintiff alleges that her father spoke with Defendant Gibson and informed him that plaintiff was hospitalized and undergoing in-patient mental health treatment. Id., ¶ 23. Despite such hospitalization, plaintiff alleges that her father informed Defendant Gibson that plaintiff would be able to resume work when she completed such treatment. Id., ¶ 24.

---

[1] The DSM-IV-TR describes dissociative disorders as follows: "The essential feature of the Dissociative Disorders is a disruption in the usually integrated functions of consciousness, memory, identity, or perception. The disturbance may be sudden or gradual, transient or chronic."

Defendant Gibson, however, informed plaintiff's father that plaintiff "was no longer allowed to set foot on the campus of West McDowell Junior High," id., ¶ 25, and that he needed to speak with plaintiff as soon as possible regarding her employment and that the Board intended to take action in relation to her employment at an upcoming meeting. Id., ¶ 26.

Plaintiff was discharged from inpatient care in early February 2009, id., ¶ 27, and the next day Defendant Gibson accompanied by assistant principal Susan I. Westall ("Defendant Westall") visited plaintiff at her parents' home. Id., ¶ 28. While Defendant Gibson stated that he wanted to check on plaintiff, both Defendant Gibson and Defendant Westall stated that the purpose of their visit was to discuss plaintiff's employment. Id. During the visit, plaintiff informed such defendants that she was scheduled to participate in out-patient mental health care for eight hours per day, five days per week for approximately three more weeks and that she would be able to return to her job once she completed the treatment. Id., ¶ 30.

Plaintiff alleges that such defendants "then informed" her that she had lost credibility in the local community due to her mental health issues and negative local media coverage of said mental health issues.[2] Id., ¶ 31. Defendant Gibson informed

---

[2] While plaintiff references a "dissociative event" and "negative local media coverage of such mental health issues," she does not allege the particulars of the actual event. As a "dissociative event" could be misconstrued as anything from sleepwalking to mass murder, the court believes it is important to at least mention the general nature of the actual event, of

plaintiff that she would not be allowed to return to her job, id., ¶ 32, and that if she desired to continue teaching, she could apply for other teaching jobs in other counties. Id., ¶ 33. Defendant Gibson informed her that options in relation to her employment with the McDowell County Board of Education were very limited. Id., ¶ 34. He states that one of the options was to resign her employment due to her mental illness, id., ¶ 35, and both Defendant Gibson and Defendant Westall stated that a resignation would result in her employment record not being negatively impacted. Id., ¶ 36.

Plaintiff further alleges that Defendant Gibson stated that he did not have the authority to terminate her employment, id., ¶ 37, but that the superintendent, defendant Ira R. Trollinger, did have the authority, id., ¶ 38, as well as the Board itself, id., ¶ 39, and that unless she resigned, the Board would likely terminate her employment at an upcoming school board meeting. Id. Defendants Gibson and Westall then presented her with a resignation letter, which defendants alleged before the EEOC that she signed. Id., ¶ 40.[3]

---

which the court is aware and takes notice of from local media coverage.

    According to press accounts, after plaintiff failed to show up for work, authorities went to plaintiff's home and discovered that hate-speech graffiti was painted on her garage door, her car had apparently been abandoned hastily, and a window to her home had been broken. Plaintiff emerged from the woods 10 hours later, substantially unharmed by others. While plaintiff stated that she did not know what happened, authorities ruled out foul play in the incident. http://www2.wspa.com/news

[3]    It is unclear from the Complaint whether plaintiff disputes signing the letter.

Plaintiff then alleges that at no time did defendants engage in the interactive process with either her or her medical providers to determine if she was qualified to perform the essential function of her job, with or without a reasonable accommodation. Id., ¶ 42. She further contends that with a reasonable accommodation[4] she would have been able to perform the essential functions of her employment, and that such accommodation would not have constituted an undue hardship to defendants. Id., ¶ 43.

## II. Causes of Action

Based on such allegations of fact, plaintiff has asserted the following causes of action against the named defendants:[5]

(1)    violation of the Americans with Disabilities Act ("ADA"), based on unlawful discrimination, by failing to provide her with a reasonable accommodation;

(2)    violation of the ADA, based on retaliation for protected activity in

---

[4]    Reading the entire Complaint in a light most favorable to plaintiff, this accommodation appears to be "short-term leave," Compl., ¶ 52, of which plaintiff informed Defendants Gibson and Westall when they visited her home and prior to their presenting her with her options concerning continued employment. Id., ¶ 30.

[5]    Plaintiff has interchangeably used the singular possessive and the plural possessive form of "defendant" in asserting her causes of action. The court has, therefore, construed each claim as asserted against each defendant. In multiple defendant/multiple claim cases, it would be preferable for the complaining party to simply state the name of each allegedly culpable defendant and the capacity in which they are sued in each claim, similar to an indictment in a criminal matter.

asking for a reasonable accommodation;

(3)     violation of the Family Medical Leave Act ("FMLA") by failing to allow plaintiff to take leave for her own serious medical condition and discharging or constructively discharging her from her employment.

In addition to compensatory damages, injunctive relief, costs, and fees, plaintiff also seeks punitive damages as to her ADA claims.

## III.   Defendants' Motion to Dismiss

### A.   Introduction

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, Defendants Westall, Gibson, and Trollinger have moved to dismiss all claims against them in their individual capacities contending that this court lacks subject-matter jurisdiction over the claims asserted against them. They contend that individual liability does not attach to public employees/supervisors under the ADA and FMLA.

Second, pursuant to Rules 12(b)(2) and 12(b)(6), Defendants Westall, Gibson, and Trollinger have moved to dismiss plaintiff's FMLA claim against them in their individual capacities based on immunity from suit. They assert that they are entitled to qualified immunity from suit under the FMLA because liability of public employees was not clearly established at the time of the alleged violation.

Third, pursuant to Rule 12(b)(6), Defendant Board has moved to dismiss all

claims against it contending that plaintiff has failed to state a claim for which relief can be granted. It contends that the Complaint fails to establish all the necessary elements for a wrongful termination, failure to accommodate, and retaliation claim under the ADA and all the necessary elements for a violation of the FMLA.

Fourth, pursuant to Rule 12(b)(1), Defendant Board has moved to dismiss plaintiff's request for punitive damages, contending that this court lacks subject-matter jurisdiction to award such relief under the ADA against a governmental entity.

Each motion to dismiss will be discussed <u>infra</u>.

**B.    Applicable Standards**

**1.    Rule 12(b)(1)**

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. <u>Capron v. Van Noorden</u>, 2 Cranch 126, 127,

2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve

the jurisdictional objection as a direct attack on the merits of the case. <u>United States v. North Carolina</u>, 180 F.3d 574, 580 (4th Cir. 1999).

### 2. Rule 12(b)(2)

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir.1989), where the Court explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. <u>Id.</u> When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." <u>Clark v. Milam</u>, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting personal jurisdiction for the limited purpose of the *prima facie* showing. <u>Bakker</u>, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assuming the credibility of any affiant, and

drawing the most favorable inferences for the existence of jurisdiction.  Id.

### 3.    Rule 12(b)(6)

Until 2007, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989);  Conley v. Gibson, 355 U.S. 41 (1957).  This "no set of facts" standard has been specifically abrogated by the Supreme Court in two decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that  the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."    Id., at 563.  The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in its complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment]
> to relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is *plausible* on its face." Id., at 570 (emphasis added).

In the second case, the Supreme Court again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient
> factual content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability...." Id. While the court accepts plausible factual allegations made in a

complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.

## IV. Discussion

### A. Individual Liability under the ADA and FMLA

Defendants Westall, Gibson, and Trollinger have moved to dismiss all claims

against them in their individual capacities contending that this court lacks subject-matter jurisdiction over the claims asserted against them. They contend that individual liability does not attach to public employees/supervisors under the ADA and FMLA. Pursuant to Rules 12(b)(2) and 12(b)(6), Defendants Westall, Gibson, and Trollinger have also moved to dismiss plaintiff's FMLA claim against them in their individual capacities asserting qualified immunity from suit under the FMLA because individual liability of public employees was not clearly established at the time of the alleged violation.

### 1.    ADA Claims

It is well settled under the ADA that only employers can be held liable as the statute specifically provides only for actions against "employers." Jones v. Sternheimer, 387 Fed.Appx. 366 (4th. 2010).[6] The ADA defines an employer as "a person engaged in an industry affecting commerce who has twenty five or more employees and any agent of such person." 42 U.S.C. § 1211(5)(A). The phrase "agent of such person" does, in the context of the ADA, create individual liability, but is

an unremarkable expression of respondeat superior – that discriminatory

---

[6]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Federal Appendix citation and by making reference to the Westlaw citation, 2010 WL 2711305.

personnel actions taken by an employer's agent may create liability for the employer.

Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.1994)(citation omitted).

Clearly, under the ADA and current case law, no cause of action exists against Defendants Westall, Gibson, and Trollinger, in their individual capacities as the Board is plaintiff's employer under such statutory scheme. The undersigned will, therefore, recommend that the ADA claims asserted against Defendants Westall, Gibson, and Trollinger in their individual capacities be dismissed with prejudice.

### 2. FMLA Claim

#### a. Statutory Analysis

Unlike claims under the ADA, it is anything but settled in the Fourth Circuit as to whether the FMLA allows causes of action to be asserted by employees against supervisory public employees in their individual capacities. Defendants correctly point out that not only has the Fourth Circuit not decided the issue, federal courts within North Carolina are divided on the issue as well as other districts in this circuit.

The only relevant decision in this district, O'neill v. Henderson County Hosp. Corp., 2005 WL 3797394 (W.D.N.C. 2005),[7] is well reasoned and on point, making it most persuasive:

---

[7] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Despite the Defendants' objection, the Court agrees with the Magistrate Judge and interprets the plain meaning of the text of the FMLA to allow employees of public agencies to be liable under the Act. *See, Sheaffer v. County of Chatham*, 337 F.Supp.2d 709 (M.D.N.C.2004); *Cantley v. Simmons*, 179 F.Supp.2d 654, 656-57 (S.D.W.Va.2002) (noting that "[t]he majority of courts that have examined the FMLA's statutory language have concluded that a plain reading indicates that public employees may be considered 'employers' under the FMLA."); *but see, Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir.2003), *cert. denied*, 124 S.Ct. 2908 (2004) (interpreting the text of the FMLA to not allow employees of public agencies to be considered employers under the FMLA); *Keene v. Rinaldi*, 127 F.Supp.2d 770 (M.D.N.C.2000) (*same*). When interpreting a statute, the plain meaning of the text controls except where a literal meaning would "compel an odd result[.]" *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989). The text of the FMLA includes public agencies within the definition of an employer. 29 U.S.C. § 2611(4)(A)(iii). Furthermore, the Act also includes within the definition of an employer "any person who acts, directly or indirectly, in the interest of an employer." Id., at § 2611(4)(A)(ii)(I). There is no indication in this statute that the provisions including certain employees within the coverage of the FMLA as employers were intended only to apply to private companies and not public agencies. *Sheaffer, supra*, at 728. To the contrary, the plain meaning of the text of the statute and the structure of its subsections indicate to this Court that such employee coverage extends to employees of all entities which are considered employers under the FMLA, including public agencies. *Id.* Therefore, the Defendants' motion for summary judgment as to the Plaintiff's FMLA claims against Defendant Sams, individually, is denied.

Id., at *5.   While defendants argue strongly in favor of this court departing from

O'neill and following the opposite determination of the United States Court for the

Middle District of North Carolina in Keene v. Rinaldi, 127 F.Supp.2d 770

(M.D.N.C.2000),[8] the undersigned can find no reason to do so as the district court in O'neill clearly considered and rejected the reasoning of Keene.

In accordance with O'neill, the undersigned respectfully finds that the plain meaning of the statute indicate that employee coverage extends to employees of all entities which are considered employers under the FMLA, including public agencies. See O'neill v. Henderson County Hosp. Corp., supra. The undersigned must, therefore, recommend that Defendants Westall's, Gibson's, and Trollinger's Motion to Dismiss, in their individual capacities, plaintiff's FMLA claim be denied on such basis.

### b.    Analysis Under Special Rules Applicable to Schools

Defendants next argue that even if this court follows O'neill, separate FMLA rules that govern public school systems (found later in the statutory scheme) specifically define "employer" as the local education agency, 29 U.S.C. § 2618(a)(2)(B), making employees of the school system not individually liable under the FMLA. In support of such argument, defendants cite Lombardi v. Bd. of Trustees Hinsdale Sch. Dist., 463 F.Supp.2d 867 (E.D. Ill. 2006), which held as follows:

> [i]t is readily apparent that the special definition of 'employer' that applies when FMLA actions occur in the local education context does

---

[8]     See also Bosse v. Baltimore County, 692 F.Supp.2d 574, 582-83(D.Md. 2010).

not countenance suits against individual defendants.

Id., at 871. What defendants overlook in their reliance on Lombardi is that even a

sister federal court in Illinois has rejected Lombardi, holding as follows:

> Essentially *Lombardi* stresses the limited definition of "employer"
> in Section 2618(a)(2)(B), a provision that embraces only school entities,
> without including individuals as Section 2611 does. But in this Court's
> view, *Lombardi's* emphasis on the "employer" definition in Section 2618
> does not take full account of the narrow scope of that section, which does
> indeed establish some "special rules" as to educational entities such as
> the Board and as to employees of such entities.
>
> On that score Section 2618(a)(1) expressly provides that the
> regular provisions of the FMLA ("the rights ..., remedies and procedures
> under this subchapter ....") apply to any "local educational agency" such
> as the Board. But where the "special rules" set out in Section 2618 ("this
> section") are not implicated-and Azcoitia has not suggested that they
> are-the rest of "this subchapter," which by definition includes Section
> 2611, remains applicable. What *Lombardi* fails to recognize is that the
> very language of Section 2618(a)(1) expressly confirms that the section
> does not contain the exclusive provisions as to local educational agencies
> and that the other provisions of the subchapter-which encompasses
> Section 2611 and hence its definitions-apply wherever the "special rules"
> set out in the other subsections of Section 2618 are not implicated.
>
> Hence any attempted invocation of Section 2618 really sets the
> inquiry on a false trail. Instead, just as *Darby* teaches, Azcoitia is
> individually subject to FMLA liability.

Cooley v. Board of Educ. of the City of Chicago, 703 F.Supp.2d 772, 775 (N.D.Ill.

2009)(footnote omitted). The logic of the court in Cooley is compelling and consistent

with this court's determination in O'neill as to statutory interpretation. Finding the

FMLA's special rules for public schools found in Section 2618 inapplicable to the

definition of employer found in Section 2611, the undersigned will recommend that

Defendants Westall's, Gibson's, and Trollinger's Motion to Dismiss, in their individual capacities, plaintiff's FMLA claim on such basis be denied.

### c. Qualified Immunity

As a third and final reason for dismissal, Defendants Westall, Gibson, and Trollinger assert that they are entitled to dismissal of the FMLA claim asserted against them in their individual capacities under the doctrine of qualified immunity. They contend that they should not be held to answer in their individual capacities under the FMLA because such potential for personal liability was not clearly established at the time of the allegedly unlawful conduct.

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When qualified immunity is asserted, a court must identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity. Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). A court must then consider whether, at the time of the claimed violation, this right was clearly established and "'whether a reasonable person in the official's position would have known that his conduct would violate that right.'"

Id. (quoting Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992)).

Of particular interest is defendants' assertion of entitlement to qualified immunity because personal *liability* of public employees was not clearly established at the time of the alleged conduct as opposed to the *specific right.* In response to such assertion of qualified immunity, plaintiff argues, as follows:

> At no point do Defendants argue that they were unaware of the requirements of the FMLA or its application to Plaintiff's situation. Instead, Defendants appear to base their qualified immunity argument on the idea that these individual Defendants did not know that they could potentially be individually liable for their actions in denying FMLA leave to Plaintiff. This circular reasoning (Defendants did not know that they could be individually liable, therefore they cannot be individually liable) appears to sidestep the purpose of the *Harlow* limitation on qualified immunity – to allow a public employee to be held individually liable for actions that are known to violate other person's statutory or constitutional rights. The question before this Court, in determining the applicability of qualified immunity, should not be whether these Defendants knew that they could be individually liable for their actions, but rather whether the actions of these Defendants violated clearly established statutory or constitutional rights of which reasonable persons in their positions would have known.

Plaintiff's Response (#13), at 16-17 (citation omitted). Besides citing Harlow in support of the general proposition, plaintiff does not cite any authority supporting her position that qualified immunity is not available where individual liability has not been clearly established under the FMLA.

Plaintiff's argument, while both logical and appealing, finds no support. First, the court could find no decisions holding that qualified immunity is unavailable when

individual liability is not first clearly established.  Second, application of qualified immunity was approved in the same circumstances in <u>Modica v. Taylor</u>, 465 F.3d 174, 188 (5th Cir. 2006), which held as follows:

> . . . Humphrey is entitled to qualified immunity against Modica's FMLA claim because it was not clearly established that public employees are subject to individual liability under the FMLA when Humphrey terminated Modica's employment, and the district court erred in failing to grant Humphrey's motion for summary judgment on this ground.

<u>Modica v. Taylor</u>, 465 F.3d at 188.  Such decision clearly addresses the availability of qualified immunity where individual liability is not clearly established.  Third, the undersigned has reviewed each decision which has cited <u>Modica</u> and can find no disagreement in the reported decisions as to the appellate court's application of the doctrine of qualified immunity.  Fourth, and finally, the decision in <u>Modica</u> appears to be in harmony with the Supreme Court's decision in <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002), in which the Supreme Court held, as follows:

> As we have explained, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. **This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,** *see Mitchell* **[***v. Forsyth***, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).**

Id., at 739 (emphasis added). While it is clearly established that public entity employers such as school boards can be held liable under the FMLA, it is far from clearly established in states comprising the Fourth Circuit that public employees are subject to individual liability under the FMLA.[9]

While the distinction made by plaintiff between clearly established *liability* and clearly established *rights* may well have merit or could be supported by case law the court could not find through independent research, plaintiff has simply failed to provide the court with any authority in support of such argument. The decision of the Court of Appeals for the Fifth Circuit in Modica, supra, is both persuasive and consistent with the teachings of the Supreme Court. The undersigned will, therefore, recommend that Defendants Westall's, Gibson's, and Trollinger's Motion to Dismiss, in their individual capacities, plaintiff's FMLA claims against them based on the doctrine of qualified immunity be granted.

### B.    Defendant Board's Motion to Dismiss

### 1.    Introduction

Pursuant to Rule 12(b)(6), Defendant Board has moved to dismiss all claims against it contending that plaintiff has failed to state a claim for which relief can be granted. It contends that the Complaint fails to establish all the necessary elements

---

[9]    The O'neill decision emanating from this district was never published.

for a wrongful termination, failure to accommodate, and retaliation claim under the ADA and all the necessary elements for a violation of the FMLA.  Defendant Board argues that since plaintiff "voluntarily resigned on her own accord," she cannot establish a *prima facie* case for wrongful discharge, such voluntary resignation negated the need for the Board to make a reasonable accommodation, and because she voluntarily resigned before asserting rights, the Board could not have retaliated against her. Defendants' Memorandum (#12), at 17-23.

### 2.    Voluntary Resignation

Pivotal to its argument for dismissal of plaintiff'sFMLA and ADA claims is Defendant Board's conclusion that plaintiff *voluntarily* resigned her position.  Review of the Complaint, plaintiff's responsive argument, and relevant case law does not support such conclusion.

First, reading the Complaint in a light most favorable to plaintiff, she specifically alleges that when visited by Defendants Gibson and Westall after returning from the in-patient program, she first informed such defendants that she was scheduled to participate in out-patient mental health care for eight hours per day, five days per week for approximately three more weeks and that she would be able to return to her job once she completed the treatment.  Id., ¶ 30.  She then alleges that such defendants "*then informed*" her that she had lost credibility in the local

community due to her mental health issues and negative local media coverage of said mental health issues.  <u>Id.</u>, ¶ 31.  She then alleges that Defendant Gibson informed plaintiff that she would not be allowed to return to her job, <u>id.</u>, ¶ 32, and that if she desired to continue teaching, she could apply for other teaching jobs in other counties. <u>Id.</u>, ¶ 33.  Defendant Gibson informed her that options in relation to her employment with the McDowell County Board of Education were very limited, <u>id.</u>, ¶ 34, and that one of the options was for her to resign her employment due to her mental illness.  <u>Id.</u>, ¶ 35. Both Defendant Gibson and Defendant Westall allegedly stated that a resignation would result in her employment record not being negatively impacted.  <u>Id.</u>, ¶ 36. Plaintiff further alleges that Defendant Gibson stated that unless she resigned, the Board would likely terminate her employment at an upcoming school board meeting. <u>Id.</u>, ¶ 39.  Defendants Gibson and Westall then presented her with a pre-typed resignation letter, which defendants alleged in proceedings before the EEOC that she signed. <u>Id.</u>, ¶ 40.

Review of plaintiff's responsive brief does not reveal that she has conceded that she voluntarily resigned:

> Further, prior to any alleged resignation of employment by Plaintiff, Defendant Gibson specifically informed Plaintiff that she would not be allowed to return to her position teaching at West McDowell Junior High, and that if she wished to continue teaching, she could look for teaching jobs in other counties (i.e. with employers other than the McDowell County Board of Education) (Doc. 1, ¶¶32-33).  While

Defendant Gibson and Westall deny that they informed Plaintiff that she would not be allowed to return to her position teaching at West McDowell High School, they freely admit that they informed her that, if she desired to continue teaching, she would need to apply for teaching positions outside of McDowell County (Doc. 1, ¶¶32- 33, Answer, ¶ 32-33). These statements were made to Plaintiff, as a teacher, by Defendants Gibson and Westall, as her principals and direct supervisors, and amounted to discharge of Plaintiff from her employment with the Board of Education. Plaintiff's direct supervisors informed her that she would no longer be allowed to continue in her employment as a teacher. These statements were made prior to any alleged resignation being tendered by Plaintiff (Doc. 1, ¶40).

Plaintiff's Response (#13), at 5-6 (footnote omitted). Plaintiff simply does not concede that she voluntarily resigned.

While the existence of a signed letter of resignation may well be *probative* on the issue of whether plaintiff tendered a letter of resignation,[10] it is not *conclusive* on whether any such letter of resignation was voluntarily given. Even if the court were to assume that plaintiff signed the letter of resignation, case law indicates that such does not end the inquiry as to whether the resignation was voluntary. Generally, resignations may be considered involuntary

where the government supplies deceptive information in connection with a resignation, and the individual resigns in reasonable reliance on that misinformation, then the resignation is considered involuntary.

Moyer v. United States, 41 Fed.Cl. 324, 328 (Fed.Cl. 1998)(citation omitted).

---

[10]     In response, plaintiff does not even admit that she signed the letter. See Plaintiff's Response (#13), f.n. 1.

Further, case law indicates in the context of the FMLA that letters of resignation are ineffective where the employer provided deceptive or incomplete employment information in securing such letter.

In a similar case under the FMLA, the district court determined that where the "options" communicated to an employee who had similarly communicated a need for leave failed to include the availability of FMLA leave, the resulting letter of resignation was involuntary:

> IDOC asks the Court for summary judgment on Williams's claim that it violated the FMLA's prohibitions on interfering with, restraining or denying the exercise of, or the attempt to exercise, his rights to leave under the FMLA.
>
> * * *
>
> IDOC argues that Williams was not entitled to FMLA leave because he never gave IDOC adequate notice that he needed Family Responsibility Leave, IDOC's policy to implement its employees' FMLA rights.... IDOC points out that ... [plaintiff's] written letter of resignation did not contain any mention of a family situation for which leave was needed or an actual request for leave.... IDOC believes since Williams never made a proper request for FMLA leave or put IDOC on notice that he might need FLMA leave, he was never entitled to it and IDOC could not have interfered with his taking it. It maintains that Williams's resignation was completely voluntary and that he first sought FMLA leave after submitting his letter of resignation, when it was too late to do anything about it ....
>
> Williams believes that IDOC's arguments are misplaced and premature. He contends that IDOC initially failed to notify Williams of his FMLA rights, so the adequacy of his request is not even an issue.
>
> The Court believes a reasonable jury could find IDOC interfered with Williams's attempt to exercise his rights under the FMLA even if he did not give proper notice. It is true that an employer may require an employee to comply with its neutral policies or collective bargaining

agreement provisions for giving notice.... In this case, the collective bargaining agreement required advance written notice along with some minimal details about why the leave was needed and how long it would be. Williams did not technically comply with these rules, but this failure it likely attributable to IDOC's interference with Williams's attempt to take FMLA leave even before he got to the stage of officially submitting a proper request.

Williams's conversation with Kilquist on November 1, 2004, was sufficient under the FMLA to put IDOC on notice that the FMLA might be in play. As noted earlier, an employee first bears the burden of "provid[ing] at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). He need not mention the FMLA by name so long as he, "place[s] the employer on notice of a probable basis for FMLA leave," and "give [s] the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave."

\* \* \*

**Nevertheless, in response, Kilquist provided Williams with false information. Whether intentionally or not, he omitted any reference to the possibility of FMLA leave and incorrectly told Williams his only option was to resign. Effectively, this was a preemptive denial of FMLA leave without adequate investigation into a situation where it was highly likely that FMLA leave would have been warranted-certainly discouraging Williams from attempting to use the leave. IDOC cannot now fault Williams with failing to make a sufficient FMLA request after it effectively informed him he was not entitled to FMLA leave.**

Williams v. Illinois Dept. of Corrections, 2007 WL 772933, \*5-7 (S.D.Ill. Mar. 9, 2007)(citations omitted; emphasis added). Clearly, plaintiff's allegations are at least sufficient to survive Rule 12 analysis as it is plausible that any letter of resignation she signed or may have signed could well be determined to be invalid as plaintiff has alleged that (1) she first communicated her need for a reasonable accommodation

and/or medical leave to Defendants Gibson and Westall (2) the options outlined by such defendants did not include leave under the FMLA.

Defendants reliance on plaintiff's voluntary resignation assumes a fact that does not yet exist as plaintiff has not alleged or admitted that she voluntarily resigned and she has alleged plausible facts from which it could be determined that any resignation letter was improperly secured.

### 3. Rule 12(b)(6) Review

Under Rule 12(b)(6), to survive a motion to dismiss, plaintiff's Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. at 1949. Defendant Board has moved to dismiss each claim asserted against it.

To state a claim for wrongful discharge under the ADA, a plaintiff must allege plausible facts that could show:

> (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under the circumstances that raise a reasonable inference of unlawful discrimination.

Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 702 (4th Cir. 2001).

To state a claim for "failure to accommodate" under the ADA, a plaintiff must allege plausible facts that could show:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position…; and (4) that the [employer] refused to make such accommodations.

Rhoads v. F.D.I.C., 257 F.3d 373, 387 (4th Cir. 2001) (citation omitted).

To state a claim for retaliation under the ADA, a plaintiff must allege plausible facts that could show: (1) that he engaged in a statutorily protected activity; (2) that an adverse action was taken against him; and (3) a causal connection between the adverse action and the protected activity.  Amir v. St. Louis University, 184 F.3d 1017, 1025 (8th Cir. 1999).

To state a claim under the FMLA, a plaintiff must allege plausible facts that could "demonstrate that she was entitled to exercise a right under the statute and that such right was denied."  O'neill v. Henderson County Hosp. Corp., 2005 WL at *8.

Reading the Complaint in a light most favorable to defendant, plaintiff has made plausible allegations of fact that could, if later proved, form the basis of a finding in her favor on such claims.  Defendant Board's reliance on plaintiff having "voluntarily resigned" is, at best, premature. The undersigned must, therefore, recommend that Defendant Board's Rule 12(b)(6) motion be denied.

## C.      Motion to Dismiss Demand for Punitive Damages

Pursuant to Rule 12(b)(1), Defendant Board has moved to dismiss plaintiff's

request for punitive damages, contending that this court lacks subject-matter jurisdiction to award such relief under the ADA against a governmental entity.

The remedies available under Title VII are applicable to actions under the ADA. Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999). While 42, United States Code, Section 2000e5 provides for punitive damages, such remedy is "not available against a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). The Defendant Board is a government entity and political subdivision as a matter of North Carolina law. N.C. Gen. Stat. §§ 115C-35 - 115C-51.

Punitive damages are not, therefore, available to plaintiff against Defendant Board on the ADA claim.[11] Plaintiff has not argued in opposition to such motion in her Response. The undersigned will, therefore, recommend that the demands for punitive damages contained in plaintiffs' ADA claims be stricken and otherwise dismissed as to the Defendant Board.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motions to Dismiss (#11) be **ALLOWED** in part and **DENIED** in part as follows:

(1)     Defendants Susan I. Westall's, Coy W. Gibson's, and Ira R. Trollinger's

---

[11]     Plaintiff specifically does not seek punitive damages on her FMLA claim. See Compl., ¶¶ 71-72.

Motion to Dismiss:

(a)      the ADA claims asserted against them in their individual capacities be **ALLOWED**, and that such claims be dismissed with prejudice;

(b)      the FMLA claim

     (i)      against them in their individual capacities, based on the FMLA not providing for individual liability of public employees, be **DENIED**;

     (ii)      against them in their individual capacities based on the special rules applicable to public schools, be **DENIED** as such rules are inapplicable to the definition of employer found in Section 2611; and

     (iii)      against them in their individual capacities based on qualified immunity be **GRANTED**;

(2)      Defendant McDowell County Board of Education's Motion to Dismiss under Rule 12(b)(6) all claims asserted against it be **DENIED**; and

(3)      Defendant McDowell County Board of Education's Motion to Dismiss under Rule 12(b)(1) the demand for punitive damages contained in plaintiffs' ADA claims be **ALLOWED**, and that such demands for

punitive damages against such governmental entity be stricken and otherwise dismissed as to the Defendant Board.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: March 28, 2011

Dennis L. Howell
United States Magistrate Judge

31